# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>MAHMOUD SHAKER SHALASH,<br><br>    Defendant. | CRIMINAL NO. 5:19-101-KKC<br><br><br>**OPINION AND ORDER** |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the defendant Mahmoud Shaker Shalash's motion (DE 25) to revoke the magistrate judge's detention order.

Shalash is charged with one count of conspiring to kidnap certain individuals for ransom in violation of 18 U.S.C. § 1201(c) and one count of conspiring to use interstate facilities in the commission of a murder for hire in violation of 18 U.S.C. § 1958.

The government moved that he be detained pending trial. Pursuant to 18 U.S.C. § 3142(e)(1), a defendant must be detained pending trial if, after a hearing, a judicial officer finds that no condition or combination of conditions will reasonably assure his appearance at future court proceedings and the public safety.

The magistrate judge conducted a detention hearing and determined that the government had proved by a preponderance of the evidence that there are no conditions or combination of conditions that would assure Shalash's appearance at future court proceedings. (DE 21, Detention Order.) The magistrate judge also concluded that the government has presented clear and convincing evidence that Shalash poses a danger to the community, particularly to an individual the government has identified as "Victim 2." Accordingly, the magistrate judge ordered

that Shalash be detained pending trial. Shalash then filed this motion, asking the Court to revoke the magistrate judge's detention order.

The Court will conduct a *de novo* review of the magistrate judge's detention order. The statute providing for review of the magistrate judge's detention order does not specifically require that the Court conduct an additional hearing. 18 U.S.C. § 3145(b). In his motion, Shalash does not request a hearing, and he does not rely on or explain evidence not already in the record that he would proffer at a hearing in support of the motion to revoke the detention order. Accordingly, a second detention hearing is not necessary. *See United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir.1987); *United States v.* Jones, No. 12:CR-105, 2012 WL 6737784, at * 1, n.1 (D. Conn. 2012); *United States v. Burks*, 141 F. Supp. 2d 1283, 1285 (D. Kan. 2001);*United States v. Alonso*, 832 F. Supp. 503, 504 (D. Puerto Rico 1993); *United States v. Bergner*, 800 F. Supp. 659, 661 (N.D.Ind.1992).

In resolving this motion, the Court will rely on the affidavit filed in support of the criminal complaint, the indictment, the Pretrial Services Report prepared by the U.S. Probation Office, the transcript of the detention hearing, the "Notice" filed by the United States after the detention hearing (which Shalash states he has no objection to the Court considering), and the pleadings submitted by the parties.

At the time of the detention hearing and the magistrate judge's detention order, the only charge against Shalash was the murder-for-hire charge contained in the criminal complaint. There is no presumption of detention on such a charge. After the magistrate judge issued his detention order, the government filed an indictment against Shalash, which contains the kidnapping charge in addition to the murder-for-hire charge. The government alleges in its response to Shalash's motion that the victim of the kidnapping charge was a minor. If that were

2

the charge against Shalash, there would be a presumption of detention in this case, which Shalash would have to rebut. 18 U.S.C. § 3142(e)(3)(E).

Nevertheless, the Court will not apply the presumption in determining whether Shalash's detention should be revoked. As discussed, in making its detention decision, the Court is relying on evidence presented at the detention hearing. At that time, Shalash was facing only the murder-for-hire charge and all parties agreed the presumption did not apply. Further, there is no evidence in the record regarding the age of the alleged victim of the kidnapping, and the indictment does not allege that the victim was a minor.

Where the presumption does not apply, detention is appropriate if the government proves by a preponderance of the evidence that the defendant is a flight risk or if it proves by clear and convincing evidence that the defendant poses a danger to the public or any person. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

In making this determination, the court is to consider "the available information" on the following factors: the nature and circumstances of the offense charged, including whether the offense is a crime of violence; the weight of the evidence against the person; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g).

As to the nature and circumstances of the offenses at issue here, conspiracy to commit murder for hire and to kidnap are both serious charges. The murder-for-hire charge carries a possible prison term of 10 years; the kidnapping charge carries a maximum life sentence. Further, both are "crimes of violence." The Bail Reform Act defines a crime of violence as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be

used in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(A),(B). Thus, this factor weights in favor of detention.

As to the weight of the evidence against Shalash, the Court must weigh the evidence regarding the danger Shalash poses to the public or any person, not the evidence of his guilt. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). Likewise, where the flight risk is under consideration, the weight of the evidence goes to the evidence of the flight risk. *United States v. Xiaorong You*, No. 2:19-CR-14, 2019 WL 2426659, at *2 (E.D. Tenn. June 10, 2019). In weighing the evidence on these issues, the Court will consider Shalash's personal history and characteristics and the nature and seriousness of any danger to any person or the community posed by his release.

A large portion of the evidence regarding any danger posed by Shalash was presented in the affidavit submitted in support of the criminal complaint and the testimony of William J. Jackson. In the affidavit, Jackson identifies himself as a deputy U.S. Marshal with the Federal Bureau of Investigation and as a detective with the University of Kentucky Police Department. At the detention hearing, Detective Jackson explained that he has been assigned to an FBI Joint Terrorism Task Force. (DE 20, Tr. at 12-13.)

In his affidavit and at the detention hearing, Detective Jackson recounted the contents of three recordings of conversations between Shalash and a confidential source.

The first recording was of a meeting that occurred on March 12, 2019 at the Days Motel in Lexington between Shalash and the source. Detective Jackson testified that Shalash owns the Days Motel and that Shalash does business there from about 10 until 5. (DE 20, Tr. at 14-15.)

Detective Jackson testified that, prior to the March 12 meeting, the source and Shalash had been communicating with each other on an unidentified different criminal matter. (DE 20, Tr. at 14.) Detective Jackson testified that, in a phone conversation before the meeting, Shalash stated

4

that he wanted to discuss something with the source that "he didn't want to talk about on the phone." (DE 20, Tr. at 14.) Detective Jackson testified that Shalash informed the source that he had lost money to an individual and wanted the source to get his money back. (DE 20, Tr. at 16.)

Detective Jackson watched the recording of the meeting at the hotel live as the meeting was happening. (DE 20, Tr. at 15-16.) In the affidavit, Detective Jackson stated that during the meeting, Shalash informed the source that an individual identified as "Victim #1" owed him $80,000. Shalash told the source Victim #1's telephone number and asked the source to retrieve his money. Shalash also provided the source with contact information for an individual who knew Victim #1.

In his motion, Shalash argues that the magistrate judge ignored Shalash's statements indicating that he did not want Victim #1 to be harmed. In his affidavit, Detective Jackson stated that, during the March 12 conversation, the source asked Shalash if he wanted Victim #1's legs broken and Shalash responded "no." The source asked Shalash what he wanted and Shalash responded, "All I want is my money." At the detention hearing, Detective Jackson testified that the source offered to "bodily harm" Victim #1 and that Shalash objected. (DE 20, Tr. at 17.) In addition, Detective Jackson testified that the source asked Shalash if he wanted Victim #1's hand in a box and that Shalash stated he did not want any hands in a box. (DE 20, Tr. at 55.) Likewise, the source asked Shalash if he wanted him to kidnap Victim #1's wife, and Shalash stated that he did not want anyone kidnapped. (DE 20, Tr. at 55.)

In a second recorded conversation between Shalash and the source that occurred on April 15, 2019, however, Detective Jackson testified that Shalash instructed the source to "do whatever you have to do to get my money back." (DE 20, Tr. at 18-19.) Shalash gave this instruction knowing that the source had indicated a willingness to use the violent means to collect debts discussed in the first conversation.

5

The third recording was of an April 30 meeting between the source and Shalash, which also occurred at the Days Motel. Detective Jackson testified that, during the meeting, the source informed Shalash that he may have located Victim #1. (DE 20, Tr. at 19.) Detective Jackson further testified that Shalash informed the source that Victim #1 had done business with another individual, who Detective Jackson identified at the detention hearing as Victim #2. (DE 20, Tr. at 19-20.) Shalash informed the source that Victim #2 owed money to four men in the community who he identified as John Sadiqullah, and Abdul Hadi – both of whom are co-defendants in this action – and Azizula Hanafi and Mohammad Mustafa. Shalash further told the source that if the men found Victim #2, they were going to kill him. (DE 20, Tr. at 20-21, 22.) Detective Jackson testified that Victim #2 reportedly owed about two million dollars to individuals in the community. (DE 20, Tr. at 79.)

At some point during this meeting, Shalash showed the source a photograph of Victim #2 and told him he could also show him a photograph of Victim #2's mother and daughter. (DE 20, Tr. at 22, 23.) There is some discrepancy in the record as to precisely when Shalash showed the source the photograph of Victim #2.[1] Regardless of the precise timing, the evidence indicates that Shalash showed the source the photograph believing that Victim #2 owed a group of men a large sum of money, that the men wanted to kill Victim #2, and that the source was willing to use violent means to collect a debt.

In his motion, Shalash argues that it is important to the danger analysis that he showed the source the photograph of Victim #2 before the source and Sadiqullah reached any agreement to kill Victim #2. Regardless, the evidence in the record indicates that Shalash showed the source the photograph believing that the men wanted to kill Victim #2 because he owed them money and

---

[1] Detective Jackson testified that Shalash showed the source the photograph of Victim #2 *after* Shalash told the source that the group of men would kill Victim #2 if they found him. (DE 20, Tr. at 22.) In a "Notice" filed after the detention hearing and after the magistrate judge issued a detention order, however, the government stated that Shalash showed the source photographs of Victim #2 and his family *before* Shalash told the source that the group of men wanted to kill Victim #2.

6

also believing that the source was willing to use violence to collect the debt.

After Shalash informed the source about the group of men who wanted to kill Victim #2, the source asked if he could meet with the group. Shalash then called Sadiqullah to come to the meeting "to talk to a guy that could help him get his money back." (DE 20, Tr. at 22, 23.)

Detective Jackson testified that, after Sadiqullah arrived at the April 30 meeting, the source asked him what he wanted done with Victim #2 and Sadiqullah stated, "I want him dead." (DE 20, Tr. at 24.) In his affidavit, Detective Jackson stated that Sadiqullah further stated, "If someone could kill him (Victim #2) for $10,000, we all four will pay someone $10,000." At the detention hearing, Detective Jackson testified that Sadiqullah was referring to himself, Hadi, Hanafi, and Mustafa. Detective Jackson testified that he understood Sadiqullah to be offering the source $10,000 from each man. (DE 20, Tr. at 24-25.) Detective Jackson's affidavit states that, when the source stated that they would have to get the money from Victim #2 before killing him, Sadiqullah stated they did not want him alive anymore.

At the detention hearing, Detective Jackson stated that the video recording of the meeting ceased functioning some time before Sadiqullah arrived. Thus, the portion of the meeting that occurred after Sadiqullah arrived was recorded only on audio. (DE 20, Tr. at 65.) In his motion, Shalash argues that there is no video to corroborate the source's word that Shalash was present during the entire April 30 meeting. Detective Jackson testified, however, that, in an interview that occurred after Shalash's arrest, Shalash admitted that he was present for the entire meeting. (DE 20, Tr. at 30-31.) He also admitted that he provided a photograph of Victim #2 to the source. (DE 20, Tr. at 31.)

In his affidavit, Detective Jackson states that, in the April 30 conversation, the source suggested that Shalash and Sadiqullah should meet at a mosque in Lexington so that Shalash could "provide a 'fatwa' authorizing the killing." Detective Jackson further stated in the affidavit

7

that Shalash and Sadiqullah agreed to that procedure. At the detention hearing, Detective Jackson stated he had no evidence that any such fatwa was ever issued or that Shalash has ever issued any fatwa for any purpose. (DE 20, Tr. at 60.) In his motion, Shalash argues that the magistrate judge ignored evidence that Shalash has no authority to issue a fatwa calling for the killing of any person. In resolving this motion, the Court has not considered any evidence indicating that Shalash agreed to issue a fatwa.

In his motion, Shalash argues that the magistrate judge ignored that, in his post-arrest interview, Shalash denied that he heard any discussion regarding any harm to Victim #2. (DE 20, Tr. at 31.) He also denied that he ever provided the source a photograph of Victim #2's mother and daughter. (DE 20 Tr. at 31.) Regardless, the evidence shows that Shalash informed the source that Victim #2 owed money to several men and that he further informed the source that the men wanted Victim #2 to be killed. Further, Shalash mentioned Victim #2 to the source and showed the source a picture of Victim #2 believing that the source was willing to use violent means to collect debts.

In his motion, Shalash argues that the magistrate judge ignored the "absurdity of Mr. Shalash wanting to kill someone who purportedly owed a debt, thereby negating the possibility of recovery." (DE 25, Motion at 10.) It does not appear, however, that Victim #2 owed Shalash money. Victim #2 owed four other men money, and the evidence indicates that Shalash believed the men wanted to kill Victim #2 and that Sadiqullah actually made a statement to that effect. Whether that would make it impossible for the men to recover money from Victim #2 is irrelevant. The only evidence in the record is that Sadiqullah did indeed want Victim #2 killed, and that Shalash knew that.

Detective Jackson testified that during the recorded conversations, Shalash made several statements expressing some disinclination toward harming at least Victim #1. (DE 20, Tr. at 53-

8

54.) In his motion, Shalash argues that the magistrate judge erred in finding that these statements involved only harm to Victim #1. Shalash argues that, on pages 53-54 of the transcript, Detective Jackson actually testified that Shalash rejected violent means of collecting on the debts owed by both Victim #1 and Victim #2.

On page 53 of the transcript, in cross-examining Detective Jackson, Shalash's counsel mentions several statements in which Shalash indicates he does not want anyone hurt. (DE 20, TR. at 53.) Shalash's counsel stated that he (counsel) would consider the sample statements to pertain to either Victim #1 or Victim #2. However, Shalash's counsel did not ask Detective Jackson whether the statements pertained to Victim #1 or Victim #2. The statements by Shalash's counsel, to the extent they indicate that Shalash rejected violence to Victim #2, are not evidence. The Court has found no evidence that any of the statements were made with regard to Victim #2.

Shalash argues that Detective Jackson testified that Shalash rejected violence in each of the recorded conversations. In support of that assertion, Shalash again cites to pages 53-54 of the transcript and particularly to a question in which his counsel asks Detective Jackson whether he has reviewed "all of the recordings that are available," and asks "how many times across all of those recordings" Shalash says words indicating a disinclination towards violence. (DE 25, Motion at 11; DE 20, Tr. at 53-54.) Detective Jackson stated that he could not give an exact count but agreed that such statements are contained on "the recordings." He does not indicate which recordings and was not asked to do so. (DE 20 Tr. at 54.)

Shalash argues the magistrate judge incorrectly determined that Victim #2 owed Shalash money. The evidence in the record indicates that Victim #2 owed four men money, but there is no evidence in the record that Victim #2 owed Shalash money. Regardless, the evidence shows that Shalash knew that Victim #2 owed a group of men money, including Sadiqullah; that he believed

9

Sadiqullah and the other men would kill Victim #2 because of the debt; that he knew that the source had expressed a willingness to use violent means to collect on a debt; that he connected Sadiqullah and the source; and that he showed the source a photograph of Victim #2. Moreover, Detective Jackson testified that, on May 3, Shalash sent a message to the source via Viber, a social media communications app, providing the source with Victim #2's phone number. (DE 20, Tr. at 30.) Shalash denied doing this in his post-arrest interview. Again, however, he conceded that he at least showed the source a photograph of Victim #2.

This is clear and convincing evidence that, if not confined pending trial, Shalash poses a serious danger to the community, particularly to Victim #2.

As to the evidence that Shalash poses a flight risk, U.S. Probation Officer Tony Gilkey testified that the Court did not detain Shalash pending trial in a prior criminal matter. In that matter, Shalash was convicted of structuring currency transactions totaling more than $230,000 to evade federal reporting requirements. *United States v. Shalash*, No. 5:12-76 (filed June 21, 2012). Officer Gilkey supervised Shalash during that time. (DE 20, Tr. at 92.) He testified that Shalash was compliant with all conditions and directions imposed by the Court and the U.S. Probation Office during this term of supervision. (DE 20 Tr. at 93.) Officer Gilkey further testified that the judge presiding over that matter permitted Shalash to travel domestically and internationally four or five times while under pretrial supervision. (DE 20, Tr. at 93-95.)

In that case, however, Shalash faced a maximum sentence of five years. He was ultimately sentenced to two years of probation. (DE 20, Tr. at 96.) The charges contained in the current indictment carry a possible life sentence. In his motion, Shalash argues that the Court should consider "the availability of a strong affirmative defense like entrapment" in determining flight risk. (DE 25, Motion at 12.) While it may be appropriate to consider evidence supporting such a defense, the Court cannot find that any such evidence currently in the record in this case is so

overwhelming that it would negate the incentive to avoid trial altogether on the serious offenses at issue.

Shalash has extensive ties to Lexington. He has eight siblings who live here. Shalash reported that he has a supportive family and support system. Two witnesses at the detention hearing who have known Shalash for decades testified that they would be willing to be third-party custodians of Shalash if he were released pending trial and that they would report to the Court any possible violations of his release conditions.

Shalash apparently owns two local businesses (Days Inn Motel and Sami's Carwash) and derives a monthly income of $8,000. Shalash owns a home in Lexington, is the Imam at the Lexington Islamic Center, and is active in the community. (DE 20, Tr. at 115.) He is married. It appears that he has at least one child who lives in Lexington, and he and his wife are expecting another child this summer.

Nevertheless, the Pretrial Services Report states that Shalash has a history of extensive international travel including annual trips to Saudi Arabia and India, and other trips to Bangladesh, Panama, Venezuela, Russia, and Pakistan. In his motion, Shalash argues that the magistrate judge ignored evidence that Shalash's travels are religious in nature. (DE 25, Motion at 13.) The trips are nonetheless important in the flight-risk analysis because they show that Shalash has the means and know-how to travel internationally.

Further, Shalash has two siblings who live in the West Bank. He has substantial financial assets and estimates his net worth at $2,000,000. Detective Jackson testified that he searched Shalash's residence and found over $100,000 in cash. (DE 20 Tr. at 37.) While the FBI seized all the cash it found, the fact that such a large sum was found in the residence indicates that Shalash does not keep all of his cash in financial institutions where it is more easily monitored. (DE 20, Tr. at 37.) Further, Shalash's prior structuring conviction indicates that, at least in the

past, he sought to evade required monitoring of his assets.

Considering all the factors set forth in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that there are no conditions that would reasonably assure Shalash's appearance if he were released. Considering the same factors, the Court finds by clear and convincing evidence that there are no conditions that could reasonably assure the safety of the public, particularly Victim #2, if Shalash were released.

Accordingly, the Court hereby ORDERS that Shalash's motion to revoke the magistrate judge's detention order (DE 25) is DENIED.

Dated June 17, 2019

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY