Eastern District of Kentucky
**FILED**

JUN 2 2 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

CRIMINAL ACTION NO. 5:19-CR-101-S-KKC

UNITED STATES OF AMERICA                                     PLAINTIFF

V.                     **BINDING PLEA AGREEMENT**

MAHMOUD SHAKER SHALASH                                       DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Superseding Indictment, charging a violation of 18 U.S.C. § 1201(c), and Counts 3 and 4, each charging a violation of 18 U.S.C. § 1956(a)(3)(B). Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 2. Pursuant to Rule 11(c)(1)(C), the United States and the Defendant agree to sentencing guidelines calculations and to a specific sentence. Pursuant to Rule 11(c)(4), if the Court accepts this plea agreement, the agreed disposition will be included in the judgment.

2. The essential elements of Count 1 are:

    (a) The Defendant conspired with at least one other person to commit the crime of kidnapping; that is: (i) to knowingly and willfully kidnap, seize, confine, abduct, or carry away another person; (ii) with the intent to secure a ransom, reward, or other benefit; (iii) while traveling in or using any means, facility, or instrumentality of interstate commerce.

    (b) The Defendant knowingly and voluntarily joined the conspiracy.

#168

    (c)    A member of the conspiracy did one of the overt acts described in the Superseding Indictment for the purpose of advancing or helping the conspiracy.

3.    The essential elements of Count 3 and 4 are:

    (a)    The Defendant conducted or attempted to conduct a financial transaction.

    (b)    The property involved in the financial transaction was represented to be the proceeds of specified unlawful activity; to wit, the interstate transportation of stolen property in violation of 18 U.S.C. § 2314.

    (c)    The Defendant had the intent to conceal or disguise the nature, source, ownership, and control of property believed to be the proceeds of specified unlawful activity.

4.    As to Counts 1, 3, and 4, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

    (a)    In November 2017, the Defendant met with an individual (hereinafter "Person A") who represented he was running a business involving the theft, storage, transportation, and sale of merchandise that had traveled in foreign and interstate commerce. Person A represented he earned a large amount of income from this business and needed a "bank" through which he could launder a portion of this income. The Defendant expressed willingness to play this role for Person A. Unbeknownst to the Defendant, Person A was working with law enforcement.

    (b)    On February 8, 2019, in Fayette County, which is in the Eastern District of Kentucky, Person A met with the Defendant and delivered $50,000 in cash to the Defendant, which Person A represented to be proceeds from his stolen property business. Person A agreed with the Defendant that the Defendant could retain $10,000 of these funds as his fee for conducting the transaction. The Defendant then issued a check, in the amount of $40,000, to a construction company specified by Person A. The Defendant gave that check to Person A. In conducting these transactions, the Defendant intended to conceal the nature and source of the funds.

2

(c) The Defendant and Person A repeated this transaction in an exchange that occurred on March 1, 2019 and March 12, 2019. On March 1, 2019, in Fayette County, Kentucky, Person A delivered $50,000 in cash to the Defendant. On March 12, 2019, the Defendant gave Person A a check issued to the same construction company in the amount of $40,000. Again, the Defendant intended to conceal the nature and source of funds represented to be the proceeds of Person A's stolen property business.

(d) During the March 12, 2019 meeting, the Defendant told Person A about an individual who the Defendant believed owed him money. During the discussion that followed, Person A represented to the Defendant that he was willing to confront and physically harm this individual to collect the debt.

(e) On April 30, 2019, Person A again met with the Defendant in Fayette County, Kentucky. The Defendant and Person A continued to discuss Person A's represented willingness to kidnap and harm the individual discussed in the March 12, 2019 meeting. The Defendant then told Person A about another individual, L.E., who the Defendant believed owed money to the Defendant and to a group of other individuals including co-defendants Fnu Sadiqullah and Abdul Hadi. The Defendant retrieved photographs of L.E. and L.E.'s family and showed these photographs to Person A to help Person A identify L.E. The Defendant then told Person A about Sadiqullah, Hadi, and their associates, stating, "[i]f they get ahold of [L.E.], they'll kill him." The Defendant then agreed to introduce Person A to Sadiqullah, called Sadiqullah, and asked him to come meet Person A. Several minutes later, Sadiqullah arrived at the meeting, and the Defendant told Sadiqullah that Person A "can help." The Defendant asked Sadiqullah to supply L.E.'s address to Person A. Sadiqullah responded that Hadi and other individuals possessed that address, and the Defendant offered to arrange a meeting among them to facilitate sharing of that information. As Sadiqullah continued to discuss the matter at length with Person A, the Defendant left the meeting for a brief period and then returned. Upon his return, the Defendant observed Person A and Sadiqullah continue to discuss an agreement to pay Person A to kidnap and harm L.E. and potentially a member of L.E.'s family over the money owed. The Defendant joined this agreement and participated in it by offering assurances to Sadiqullah about the potential legal ramifications of their actions, telling Sadiqullah, "you don't have to worry about it." The Defendant also gave Sadiqullah

    assurances about the money that would be owed to Person A, telling Sadiqullah, "It's just like some lawyers . . . . We win the case . . . we take so much. If we don't win the case . . . you don't owe us anything, you know." The Defendant continued to offer his assistance and support in facilitating the exchange of information among Person A, Sadiqullah, Hadi, and the others.

(f)  On May 3, 2019, the Defendant transmitted a message to Person A through Viber, an instant messaging platform used in interstate and foreign commerce. In this message, the Defendant relayed a telephone number associated with L.E. In doing so, the Defendant intended to continue facilitating the conspiracy by giving Person A information that could be used to locate L.E.

(g)  At all relevant times, the Defendant was aware that Person A maintained a residence and place of business outside of Kentucky and had to travel in interstate commerce to engage in any of the aforementioned activities. The Defendant also informed Sadiqullah of this fact during the April 30, 2019 meeting.

5.  The statutory punishment for Count 1 is imprisonment for not more than life, a fine of not more than $250,000, and a term of supervised release of not more than five years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

6.  The statutory punishment for Counts 3 and 4 is imprisonment for not more than twenty years per count, a fine of not more than $250,000 per count, and a term of supervised release of not more than three years per count. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

7. The United States and the Defendant agree to the following sentencing guidelines calculations and specific sentence, which binds the Court upon acceptance of this plea agreement:

    (a) United States Sentencing Guidelines (U.S.S.G.), November 2018 manual, determines the Defendant's guidelines range.

    (b) The total offense level applicable to Count 1 is 27, which includes the following:

        i. A base offense level of 32, pursuant to U.S.S.G. § 2X1.1 and 2A4.1.

        ii. A 3-level reduction, pursuant to U.S.S.G. § 2X1.1(b)(2), because the Defendant had not yet completed all the acts he believed necessary on his part for the successful completion of the substantive offense. The Defendant agrees the evidence would establish that Sadiqullah and Hadi located L.E. on May 2, 2019, called Person A, and requested Person A to kidnap and harm L.E. The Defendant also agrees that these actions generally were contemplated by his agreement with Sadiqullah and, thus, were within the scope and in furtherance of their jointly undertaken criminal activity for purposes of U.S.S.G. § 1B1.3(a)(1)(B)(i)-(ii). The United States agrees that the evidence does not establish it was then reasonably foreseeable to this Defendant that Sadiqullah and Hadi would take those actions (as opposed to additional preparatory steps) at that point in time. For that reason, the United States agrees that, for this Defendant alone, the May 2, 2019 event is not part of the relevant conduct pursuant to U.S.S.G. § 1B1.3(a)(1)(B)(iii).

        iii. A 2-level decrease pursuant to U.S.S.G. § 3B1.2(b), because the Defendant was a minor participant in the kidnapping conspiracy.

    (c) The offense level for Counts 3 and 4 will be determined largely on the basis of the aggregate amount of money involved and thus group pursuant to U.S.S.G. § 3D1.2(d). The total offense level applicable to Counts 3 and 4 is 18, which includes the following:

      i.    A base offense level of 16 pursuant to U.S.S.G. § 2S1.1(a)(2) and 2B1.1(b)(1)(E).

      ii.    A 2-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(2)(B).

(d) Under U.S.S.G. § 3D1.4, the Defendant's combined offense level is 27. Count 1 is treated as a separate group from Counts 3 and 4 under the principles of U.S.S.G. § 3D1.2 and for the purposes of U.S.S.G. § 3D1.4. Count 1 reflects the highest offense level (27) and results in 1 unit pursuant to U.S.S.G. § 3D1.4(a). The total offense level applicable to Counts 3 and 4 (18) is 9 levels less serious than the highest offense level and results in no additional units pursuant to U.S.S.G. § 3D1.4(c).

(e) Under U.S.S.G. § 3E1.1, the Defendant will receive a 2-level decrease for acceptance of responsibility, unless the Defendant commits another crime, obstructs justice, or violates a court order. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(f) The Defendant has 1 criminal history point, which places the Defendant in criminal history category I.

(g) Based on offense level 24 and criminal history category I, the guidelines range for imprisonment is 51 to 63 months.

(h) The Defendant's sentence of imprisonment shall be 51 months

(i) The Defendant's term of supervised release shall be five years.

(j) The Defendant's fine shall be $20,000.

(k) Restitution is not applicable because the Defendant was apprehended before members of the conspiracy could harm a victim.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Superseding Indictment and will execute any documents necessary for this forfeiture. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses, as set out in the forfeiture allegation of the Superseding Indictment. The Defendant also agrees to the imposition of a money judgment in the amount of $18,138.01, which represents the difference between the total amount of property involved in Counts 3 and 4 and the property listed in the forfeiture allegation of the Superseding Indictment. The Defendant agrees that the United States may apply funds seized from his residence to satisfy this money judgment.

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection

with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant intentionally fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

12. The United States will not bring additional charges against Defendant based on information known to the United States at the time of this plea agreement.

13. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 1/27/2020     By: _____
Andrew T. Boone
Assistant United States Attorney

Date: 1/27/2020     _____
Mahmoud Shaker Shalash
Defendant

Date: 1/24/2020     _____
Brandon W. Marshall
Attorney for Defendant

**APPROVED**, this _____ day of _____, _____.

_Karen K. Caldwell_
UNITED STATES DISTRICT JUDGE

10