```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION AT LEXINGTON
                               - - -
UNITED STATES OF AMERICA,       : Docket No. 19-cr-101
                                :
                    Plaintiff,  : Lexington, Kentucky
                                : Monday, June 22, 2020
                                : 11:00 a.m.
versus                          :
                                :
MAHMOUD SHAKER SHALASH,         :
                                :
                    Defendant.  :

                               - - -
                     TRANSCRIPT OF SENTENCING
                      BEFORE KAREN K. CALDWELL
                  UNITED STATES DISTRICT COURT JUDGE
                               - - -
```

APPEARANCES:

| | |
|---|---|
| For the United States: | ANDREW T. BOONE, ESQ.<br>KATHRYN ANDERSON, ESQ.<br>U.S. Attorney's Office<br>260 W. Vine Street<br>Suite 300<br>Lexington, Kentucky 40507 |
| For the Defendant: | BRANDON WAYNE MARSHALL, ESQ.<br>Nash Marshall, PLLC<br>129 W. Short Street<br>Lexington, Kentucky 40507 |
| Court Reporter: | ELAINE S. HABERER, RPR<br>Official Court Reporter<br>101 Barr Street<br>Lexington, KY 40507<br>(859) 469-7456 |

Proceedings recorded by mechanical stenography, transcript produced by computer.

2

(Proceedings commenced at 11:03 a.m. in open court.)

THE COURT: Will the clerk please call the matter to come before the Court.

COURTROOM DEPUTY: Yes, Your Honor. Lexington Criminal Action Number 19-cr-101, United States of America vs. Mahmoud Shaker Shalash, called for sentencing.

THE COURT: Would the United States make its appearance for the record.

MR. BOONE: Good morning, Your Honor. Andy Boone and Kate Anderson for the United States.

THE COURT: Mr. Boone, Ms. Anderson.

For the defense.

MR. MARSHALL: Good morning, Your Honor. Brandon Marshall on behalf of Mahmoud Shalash, who is seated to my left.

THE COURT: Mr. Shalash, Mr. Marshall.

This matter is called on for a sentencing hearing. Has the United States received the presentence report, the addendum, and all related materials?

MR. BOONE: Yes, Your Honor.

THE COURT: I see there were no objections filed. Are there any you would bring to my attention today?

MR. BOONE: No objections.

THE COURT: Very well. Mr. Marshall, have you and your client received the presentence report, addendum, and all

1  related materials?

2  MR. MARSHALL: Yes, Your Honor.

3  THE COURT: I see no objections were -- I think there
4  were some modifications made, but are there any objections you
5  would bring to my attention today?

6  MR. MARSHALL: No objections, and we thank Officer
7  Cardin for an excellent report as well.

8  THE COURT: Thank you. The Court will adopt the
9  factual findings and the advisory guideline applications that
10 are set forth in the presentence report. Accordingly, the
11 Court determines that the appropriate advisory guideline range
12 for this defendant is from 51 to 63 months based on a total
13 offense level of 24 and a criminal history category of 1.

14 Having noted that, however, the parties entered into a
15 binding plea agreement which the Court will agree to accept
16 and therefore sets the defendant's sentencing range as
17 51 months.

18 Are there any motions from the United States at this
19 time?

20 MR. BOONE: There is the matter of the motion that we
21 filed under seal.

22 THE COURT: All right. I have that, but there are no
23 counts to dismiss?

24 MR. BOONE: Oh, I'm sorry. Yes. The United States
25 moves to dismiss Count 2 of the superseding indictment --

1  THE COURT: Very well.
2  MR. BOONE: -- and all counts of the underlying
3  indictment.
4  THE COURT: All right. All but the count of
5  conviction and all other indictments will be dismissed in this
6  case.
7  The Court will note that it has received letters
8  submitted on behalf of the defendant which it will give due
9  consideration, appropriate consideration.
10  At this time, I will hear from the parties on the motion
11  that has been filed, although I will say that I will grant
12  that motion unless the parties wish to be heard.
13  Do you want to be heard? I'm happy to hear from you up
14  here at the bench.
15  MR. BOONE: Mr. Marshall has filed a response to that
16  so I will defer to him.
17  THE COURT: Come on up, and we'll talk about it under
18  seal.
19
20  **A PORTION OF THE TRANSCRIPT IS**
21  **FILED SEPARATELY UNDER SEAL**
22
23
24
25

1    THE COURT: I have received sentencing memoranda and
2 motions from the United States regarding the Court's ultimate
3 sentencing. I will give them all due consideration.
4    I'm going to hear from the lawyers in just a moment,
5 Mr. Shalash. But before I do, is there anything that you
6 would like to say to aid the Court in its sentencing
7 determination?
8    THE DEFENDANT: Your Honor, this coming September I
9 will be 72 years old. And this coming January, I will be in
10 this country for 51 years. But last year, I stumbled. I made
11 the wrong decision, and I paid for it. I've been in detention
12 for 13 and a half months but, by God, it feels like 13 and a
13 half years.
14    I am so sorry for what I did, and I wish I can really
15 delete it or scrub it from my record. I apologize for you,
16 for the United States government, for my wife, for my
17 relatives, for my community for what I did. And today I beg
18 you for your mercy to really let me be home confinement with
19 my wife and two children. That one of them, the youngest,
20 next month will be a year old, and the other will be 27 months
21 coming at the end of this month.
22    I count on your mercy, Your Honor. That's all that I can
23 say. I'm really sorry for what I did.
24    THE COURT: Thank you very much.
25    Mr. Marshall.

6

MR. MARSHALL: Your Honor, I think Mr. Shalash's words ring with sincerity, and I trust that Your Honor will take them into account.

This is plainly a serious case and nobody, not even Mr. Shalash, is here to pretend otherwise. But he has done much to atone. He has agreed to a substantial forfeiture and a notable fine. His offer to plead guilty was expedient, preserving government resources, and his offer to assist them in the prosecution of others was equally expedient.

He has suffered deeply in solitary confinement for the vast majority of his incarceration. And certainly, the Woodford County jailer has bent over backwards to try to be good to him and to protect him, and he is so thankful for that.

But the fact remains that when you sit in solitary confinement at that jail, what most days revolve around is the incessant screaming and banging from the inmates in the other solitary cells across the hall who are there for very different reasons than Mr. Shalash. They are not there for protection.

He mentioned his son. And as I sat there yesterday with my boys on Father's Day, I couldn't help but think about the fact that he's never held his baby boy. And that's punishment. It may not be conventional punishment, but his separation from people that he cares about so deeply, at this

point in his life, is punishment the Court can factor.

I have assured Mr. Shalash that Your Honor is a judge that doesn't view people as just the sum of their greatest regrets. And to that end, I would point out that he has raised a family full of successful children. He has been intimately involved in the successes of nieces and nephews and even the children of veritable strangers.

He's built businesses, served the poor, dutifully served the imprisoned. He built a school. He was working towards a community center. He's led religious pilgrimages for decades, and he worked to bring wayward Muslims back to their faith.

Beyond all those things, we ask Your Honor to consider our request for consideration in light of the COVID-19 virus and the special health risks that that virus poses to Mahmoud. He is of advanced age, he is a medicine-dependent diabetic, and he has hypertension.

Referenced in our sentencing memorandum is a study from the CDC that holds that 80 percent of all deaths from COVID-19 are from patients 65 years and older. Couple that with the day after I filed our sentencing memorandum, the Washington Post ran an article with the headline, "Patients with underlying conditions were 12 times as likely to die of COVID-19 as otherwise healthy people."

Specifically mentioned in that article, diabetics and patients with heart conditions. Multiply those, and Your

Honor can appreciate what's at stake for Mahmoud.

While the Bureau of Prisons is doubtlessly doing all that they know to do, it's still not enough, even in prison hospitals, as we see from the headlines here from our local institution.

In a county of over 300,000 people, the 1,500 inmates at FMC Lexington represent 40 percent of all Fayette County's COVID-19 deaths. I think that underscores the crossroads that Mahmoud stands here before Your Honor with asking for mercy.

I reached out to the Bureau of Prisons and the designation center at Grand Prairie, Texas because I actually have three elderly and, in one way or another, sick clients right now pending sentencing.

And my question was, simply: What are you going to do with these folks who might otherwise, from their health perspective, face drastic and great risks of being incarcerated? Is there a plan to put any of those people on home confinement?

And the answer -- and I was surprised at how quickly I got an answer from the Bureau because sometimes that takes a while -- was simply the only institution situated to address that concern is the Court. If ordered to prison, we will imprison.

THE COURT: That's their job.

MR. MARSHALL: Absolutely.

1  THE COURT: It's not their job to not follow my
2  orders.
3  MR. MARSHALL: Correct.
4  THE COURT: Yes.
5  MR. MARSHALL: And so, frankly, that's the segue
6  point for me is I'm thankful knowing, Your Honor, that you
7  still have jurisdiction over this one. I know Your Honor has
8  spent more time than you probably could have ever imagined
9  reviewing emergency petitions and requests from inmates who
10 are saying, please get me out of here.
11    This is one, given his health, given his age, where we
12 feel we could take a different path. It's an extraordinary
13 ask, I recognize that, but these are extraordinary times.
14    He's done all that he could do to help the United States.
15 He testified powerfully. And based on all those factors,
16 Judge, we ask you to consider, whatever sentence is imposed
17 here, he be permitted to serve it on home confinement.
18    He would gladly accept whatever lockdown conditions that
19 requires. Letting him see a doctor and nothing else? Sold.
20    Whatever term Your Honor wants to place on him, he will
21 go home to his wife, who is healthy, and his two children, who
22 are healthy, and remain.
23    And so for all those reasons, Judge, we just ask you for
24 extraordinary mercy under these extraordinary circumstances.
25    THE COURT: Thank you.

1     Mr. Boone.

2     MR. BOONE: Thank you, Your Honor. The government's
3 recommendation is what's stated in the motion, 41 months'
4 incarceration.

5     I don't want to get lost in this -- like we talk about
6 Mr. Shalash's good acts in his life and his health conditions
7 and age. I don't want the seriousness of the offense to get
8 lost.

9     I know Mr. Marshall mentioned it, and I don't want to
10 belabor it, but we cannot forget that this was a very serious
11 crime involving a plot to kidnap another man's son, an
12 innocent 12-year-old boy.

13     And I'll say a lot more about the offense and seriousness
14 of the offense at next month's sentencing of Mr. Sadiqullah.
15 But for purposes of today, I just don't want that to get lost.

16     Because of that, we think it's necessary that --
17 recognizing that Mr. Shalash has served 13 and a half months
18 already, we think it's necessary that there be some additional
19 penalty, some additional restriction of liberty above and
20 beyond the time already served, recognizing that it has been
21 hard time. That's the primary reason that we are recommending
22 41 months.

23     Mr. Shalash has received credit for his timely acceptance
24 of responsibility, for his role in the offense, for his
25 cooperation. If he hadn't taken those positive steps, he

1  would be looking at a much longer sentence.

2  But the offense itself still remains very serious; and
3  for that reason, we ask the Court to impose a 41-month
4  sentence.

5  THE COURT: These kinds of cases are always difficult
6  when the Court is confronted with such an intelligent man who
7  is loved by so many, who is successful, a leader in his
8  community, which really makes you question what are we doing
9  here?

10  Well, this is a serious crime, one for which the
11  defendant has fully accepted responsibility and seems to
12  express genuine remorse. He's willing to pay a fine and
13  forfeiture. But in some ways, one cannot be allowed to
14  purchase their way out of other punishment for the crime.

15  The Court also considers almost the multiple of time when
16  someone is 71 years old, just a little bit older than I am, so
17  I understand the notion of being 71 or 72 and how precious
18  time is as we approach the end of our lives.

19  But we really do have to go back to the seriousness of
20  this crime. John Sadiqullah sought the advice of his imam in
21  how to deal with a man who owed him money. He sought help
22  through people that he trusted, a manner and method in which
23  he could be guided by an official in his faith and in his
24  community.

25  So what happens? A little later, the imam calls

1  Sadiqullah up on the phone and offers the assistance of
2  someone who has expressed his willingness to use violent and
3  illegal means to get Mr. Sadiqullah's money.
4       But for Mr. Shalash, this crime would not have happened,
5  so there has to be consequences. There must be consequences
6  for these actions, but justice must be tempered with mercy.
7  And under current circumstances, this Court is willing to
8  temper justice with mercy.
9       I heard the testimony. I do believe it is worth a
10 sentencing reduction as much as 12 months. However, it is the
11 Court's concern for this defendant's age and infirmity that
12 drives its decision further under 3553(a) for a reduction.
13      Therefore, it is the judgment of this Court that the
14 defendant is hereby committed to the custody of the Bureau of
15 Prisons to be imprisoned for a term of 24 months on Counts 1,
16 3, and 4, to run concurrently with each other, for a total
17 term of 51 months.
18      Now, upon release from prison, Mr. Shalash, you will be
19 on supervised release for a term of five years on Count 1 and
20 three years on Counts 3 and 4, to run concurrently, for a
21 total term of five years.
22      Within 72 hours of release from custody of the Bureau of
23 Prisons, you must report in person to the probation office in
24 the district to which you are released.
25      Now, while you are on supervised release, you shall not

1 commit another federal, state, or local crime, and you must
2 comply with the mandatory and standard conditions set forth in
3 the judgment and commitment order.
4 You must also comply with the following additional
5 conditions:
6 You must not possess a firearm, destructive device,
7 ammunition, or a dangerous weapon.
8 The Court will suspend the drug testing condition
9 ordinarily imposed by statute because it does not appear to be
10 necessary.
11 In addition, you must comply with the following special
12 conditions:
13 You will be under house arrest, home detention.
14 Is it home -- detention is what I'm looking for. There
15 is a distinction here.
16 PROBATION OFFICER: Yes, Your Honor.
17 THE COURT: You will be under home detention for a
18 period of 12 months. That will be with electronic and/or GPS
19 monitoring at the discretion of the United States Probation
20 Office.
21 That means that you shall not leave your home for any
22 purpose unless it is preapproved by the probation officer and
23 orders of this Court. That will allow your health
24 considerations to be taken into consideration but will bring
25 about a more serious sentence to reflect the seriousness of

1 this crime.

2 You shall submit your person, property, house, residence,
3 vehicle, papers, computers, as defined in Title 18, United
4 States Code 1030(e)(1), including other storage devices, to a
5 search at the direction and the discretion of the probation
6 officer. That means any kind of electronic storage device to
7 which you may have access.

8 This crime was committed at the defendant's home.
9 Therefore, the Court expects that the probation office shall
10 have full access to the home and to the computer equipment
11 that is in the defendant's care, custody, and control or is
12 regularly used by him.

13 You must provide the probation office with any access to
14 financial information that they request from you, and you must
15 not incur credit charges or open lines of credit without the
16 approval of the probation officer unless you have either paid
17 all of your financial obligations or are in compliance with
18 the installment payment schedule.

19 And let me also say something about the home detention.
20 The defendant shall not have visitors in his residence, except
21 for immediate family, unless that is preapproved by the United
22 States Probation Office.

23 Now, based on your current financial situation, the Court
24 imposes a $20,000 fine. It's ordered also that you shall pay
25 the United States a special assessment of $300, both of which

1  are due immediately.
2     The defendant will forfeit all interest in property
3  listed in the forfeiture allegation of the superseding
4  indictment.
5     Mr. Marshall, is there any legal reason sentencing should
6  not be imposed as stated?
7           MR. MARSHALL:  No, Your Honor.  Thank you.
8           THE COURT:  Mr. Boone.
9           MR. BOONE:  No, Your Honor.  Thank you.
10          THE COURT:  Very well.  Mr. Shalash, I want you to
11 listen carefully.  The clerk of court is about to give you
12 some information regarding your rights to appeal, some of
13 which I believe you've waived.  I'll give you a copy of this
14 to keep for your records, ask you to sign a copy for the
15 Court's records, and I know Mr. Marshall is going to keep you
16 well advised.
17          (The form entitled "Court's Advice of Right to
18 Appeal" was read aloud in open court by the clerk, and said
19 form was signed by the defendant.)
20          THE COURT:  And the Court will not impose interest on
21 the fine.
22    Has it been paid?  I thought it had already been paid.
23          MR. MARSHALL:  Judge, I believe we'll pay the fine
24 within the next couple of days.
25          THE COURT:  Okay.  Thank you very much.

MR. MARSHALL: There was some talk about crediting some of that from the money that's owed back to Mr. Shalash, and that's been delayed.

THE COURT: All right. Thank you.

MR. MARSHALL: Judge, my client has executed the advice of rights of appeal, and we've returned that to madam clerk.

THE COURT: It will be filed in the record.

Anything further from the United States?

MR. BOONE: One matter of clarification, Your Honor.

THE COURT: Yes.

MR. BOONE: I thought it would have just been me, but we each heard you say a total of 51 months in concurrent sentence.

THE COURT: No. It will be 36. I'm sorry. Well, it's 24 months, but there's a year of home confinement or house arrest so that that makes it more equivalent to a -- my intention was to make it more equivalent to a 36-month sentence, and that's -- I articulated that poorly. I apologize. 24 months in prison, five years' supervised release. Within that, a 12-month period of home confinement.

MR. BOONE: Thank you, Your Honor.

THE COURT: Okay. Thank you all very much. That concludes this hearing. Parties and counsel may be excused.

We'll take a brief recess.

1    (Proceedings concluded at 11:30 a.m.)

2                       - - -

3                  C E R T I F I C A T E

4        I, ELAINE S. HABERER, RPR, certify that the
foregoing is a correct transcript from the record of
5    proceedings in the above-entitled case.

6

7    _/s/ Elaine S. Haberer_              January 28, 2021
     ELAINE S. HABERER, RPR               Date of Certification
8    Official Court Reporter