# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAHMOUD SHAKER SHALASH, )<br>)<br>Defendant. )<br>) | NO. 5:19-CR-00101-KKC-MAS |

## REPORT AND RECOMMENDATION

The Court, on referral from the District Court, reviews reported violations of supervised release conditions by Defendant Mahmoud Shaker Shalash. Considering the record, proffer, and Shalash's allocution at the revocation hearing, the Court recommends that the District Court revoke Shalash term of supervised release and sentence him to three months' imprisonment with six months of supervised release to follow, with the added condition of home confinement.

### I.  CASE BACKGROUND

On January 27, 2020, Shalash pleaded guilty to conspiracy to commit kidnapping, and two counts of money laundering, violations of 18 U.S.C. § 1201(c) and 18 U.S.C. § 1956(a)(3)(B). [DE 107]. On June 22, 2020, District Judge Caldwell sentenced Shalash to 24 months' imprisonment on each count to be served concurrently, to be followed by 5 years of supervised release. [DE 161]. Shalash was

released from custody and began serving his supervised release term on January 15, 2021. Prior to this violation, Shalash's term of supervision was set to expire on January 14, 2026.

## II. SUPERVISED RELEASE HISTORY

### A. VIOLATION CONDUCT

The United States Probation Office's Violation Report set forth the following alleged violation conduct:

> On July 12, 2025, at 12:16 P.M. police were dispatched to the Days Motel, located at 1500 Versailles Road, in reference to a report for Harassing Communications. Police contacted the victim, via phone call and could hear that she was or had recently been crying. The victim explained to police that on this date on July 12, 2025, around 11:30 A.M., the property manager for the Days Motel, Mr. Mahmoud Shalash, knocked on her room's door. She advised that Mr. Shalash wanted to discuss the rent with the victim.
>
> . . .
>
> The victim told police that Mr. Shalash made it known to her that he was coming inside of the room. He did not force himself into the room, but the victim did not feel as if she could stop him from coming inside. Once inside, Mr. Shalash closed the door and hugged the victim. Me. Shalash then asked her for a kiss and
> the victim refused.
>
> When the victim refused to kiss Mr. Shalash, he ran his hand down her chest and pulled her shirt down, which exposed her breast. The victim then stated that Mr. Shalash continued to run his hand down to her crotch and began rubbing her vaginal area outside of her pants. When the victim began to cry, Mr. Shalash ceased his actions.

[Violation Report, p. 1-2]. Shalash was criminally charged in state court for this conduct. He ultimately pleaded nolo contendere to those charges and was sentenced to time served.

B. **PROCEDURAL SUMMARY**

The Court conducted an initial appearance on the supervised release violations pursuant to Federal Rule of Criminal Procedure ("Rule") 32.1 on August 6, 2025. [DE 261]. The Court advised Shalash of his constitutional rights, including his right to a preliminary hearing pursuant to Rule 32.1(b)(1)(A). [DE 263]. Shalash knowingly, voluntarily, and intelligently waived his right to a preliminary hearing; the Court found probable cause that the allegations in the violation report were true. [DE 263]. The United States moved for interim detention, and Shalash requested to be released. The Court heard proffer and arguments of counsel and found that Defendant met his burden of demonstrating by clear and convincing evidence that he would not fail to appear or flee or pose a danger in the interim, and it released Shalash pending the final hearing before the undersigned. The Court released Shalash on the previously imposed release conditions with the additional conditions of home incarceration with location monitoring, prohibition of contact with the victim, and a restriction preventing Shalash from being present at the Days Motel. [DE 263].

At the final hearing on January 18, 2025, the Court found Shalash to be competent to enter a knowing, voluntary, and intelligent stipulation to the violation. [DE 278]. For purposes of the Rule 32.1 proceedings, Shalash admitted the factual bases for those violations. [DE 278]. Accordingly, the Court found that the United States established the reported violations as reflected pursuant to 18 U.S.C. § 3583(e).

At the time of sentencing on his original offense, Shalash was assessed a Criminal History Category I. Count 1 of the original offense of conviction was a Class

A felony. This violation is a Grade C. Thus, the recommended Guidelines range of imprisonment upon revocation is three to nine months, with a statutory maximum of five years' imprisonment. U.S.S.G. § 7B1.4 and 18 U.S.C. § 3583(e)(3). Pursuant to 18 U.S.C. § 3583(h), the authorized reimposition of a term of supervised release for Count 1 is not more than five years' imprisonment.

### III.   ANALYSIS

The Court has evaluated the entire record and considered the arguments and victim statement presented at the final hearing, the record concerning Shalash's violation, the Presentence Investigation Report ("PIR"), and the factors set forth in 18 U.S.C. § 3583(e). Considering the incorporated § 3553(a) factors, revocation is warranted to reflect the circumstances surrounding the instant violations and Shalash's original offense, to adequately deter Shalash from future criminality, and to protect the public from any such future crimes. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(C). Revocation is also a necessary consequence for Shalash's abuse of the Court's trust. See USSG § 7, Pt. A. intro. comment 3(b) (observing that "revocation . . . should sanction primarily the defendant's breach of trust").

In recommending a specific revocation sentence, the Court carefully considers the statutory factors in § 3553(a) as incorporated in § 3583(e), as well as the applicable Guidelines range. *See generally United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). The violation offense was a state misdemeanor; however, the Court balances that consideration with the fact that the conduct at issue is a far cry from common misdemeanors such as shoplifting, possessing a marijuana joint, or public

intoxication. As highlighted in the victim's statement, this misdemeanor involved an element of striking lasting, traumatizing fear in the victim through unwanted sexual touching. This fear was amplified by the fact that Shalash entered the victim's home uninvited as her landlord, demanding rent payment. Certainly, the victim was justified in believing he was using his position of power as the person who controlled her residence to force himself on her sexually or imply or threaten that he would through his unwanted touch.

The Court also considers the nature and circumstances of the original offense as part of Shalash's history and characteristics. Shalash pleaded guilty to money laundering, and far more concerning, to conspiring to kidnap someone that allegedly owed money to Shalash's associates. The offense conduct, as set forth in the Presentence Investigation Report, makes it clear that Shalash knew the victim would be kidnapped and stated he would be killed if Shalash's associates succeeded in kidnapping him. Shalash was involved in arranging for a hit man (who was, in reality, an undercover agent) to "take care of" the victim. Considering the violent nature of these circumstances as well as the sexual nature of offense at issue in this violation, the Court cannot ignore that Shalash has a history of engaging in behavior meant to frighten, intimidate, and harm others.

The Court also considers Shalash's age, health, and likelihood to be a danger to the community. *See* 18 U.S.C. § 3553(a)(2)(C) and (D) ("the need for the sentence imposed (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . medical care[.]"). Shalash is 77 years old and

suffers from a litany of chronic medical conditions, such as diabetes. Current conduct notwithstanding, Shalash's advanced age and many infirmities limit his ability to menace the community with dangerous crimes. This is evidenced by his perfect record up to this point on supervised release since 2021.

Weighing all of these facts, the Court concludes Shalash should serve three months incarceration with six months home confinement to follow, at which time his supervision will conclude. Shalash must be punished for his violation of the Court's trust by violating state law and in a manner that was particularly harmful to the community. However, with a Guidelines range of three to nine months, this sentence imposes time in a detention facility at the lowest end of the Guidelines to reflect the misdemeanor charge, while confining him to his home on supervised release for an additional six months to balance the true seriousness of the offense and his health conditions. This sentence avoids unwarranted sentence disparities among similar defendants, affords adequate deterrence to future criminal conduct, and protects the public from further crimes of Shalash. Such a sentence is sufficient but not greater than necessary to effectuate and comply with the purposes of 18 U.S.C. §§ 3583 and 3553.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS** that:

(1)     Shalash be found guilty of the reported violation;

(2)     Shalash's current term of supervised release be **REVOKED**;

(3)     Shalash be sentenced to an incarceration period of three months;

(4)   Shalash serve a reimposed **six-month term** of supervised release to follow, subject to all previously imposed conditions plus the condition of home confinement for the entirety of the six months. During this time, Shalash may only leave his home for religious services and medical appointments. Shalash may not operate or participate in the operation of the Days Motel during this term of supervised release.

Shalash preserved his right of allocution. Absent a waiver of allocution, this matter will be placed on Judge Caldwell's docket for an allocution hearing upon submission.

*Right to Object*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 7th of January, 2026.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY